IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALEXANDER A. LUGO | : | CIVIL ACTION |
| | : | |
| v. | : | No. 19-1442 |
| | : | |
| CARLOS DEANGELO, et al. | : | |

**<u>MEMORANDUM</u>**

**Chief Judge Juan R. Sánchez**                                              **September 30, 2021**

      Plaintiff Alexander Lugo brings this excessive force action against Officer Carlo DeAngelo of the Berks County, Pennsylvania Adult Probation & Parole Office (APO).[1] DeAngelo now moves for summary judgment, arguing the evidence on the record establishes the use of force was reasonable and no reasonable jury could find for Lugo. Because DeAngelo has shown there is no genuine dispute as to material fact and he is entitled to judgment as a matter of law, the Court will grant the motion.

**FACTS**

      On October 20, 2017, Officer DeAngelo and other officers arrived at 111 Walnut Street in Reading, Pennsylvania to execute an arrest warrant. The warrant was for James Buchanon, who was one of several residents of the two-story apartment unit. Plaintiff Alexander Lugo, his girlfriend, and her children also lived in the apartment. Although Buchanon was not home at the time, Lugo told the officers he would call Buchanon and tell him to come home. While the officers waited for Buchanon to return, DeAngelo allegedly noticed drug paraphernalia in plain view inside the apartment and called for police backup.

---

[1] Defendant's name is "Carlo DeAngelo." The case caption incorrectly refers to him as "Carlos DeAngelo."

Reading Police Department officers then arrived on the scene. Lugo claims the officers drew their weapons and immediately began searching the apartment for additional contraband, despite not having a search warrant or consent of the residents. After a short period of time, one of the officers found a handgun hidden on the second floor. Lugo and other occupants were placed under arrest. These facts are undisputed. *See* Lugo. Dep., ECF No. 33; DeAngelo Aff., ECF No. 33.

Lugo claims the officers then drew their weapons, "stormed" into the house, and held the residents at gunpoint during the search. Lugo Dep., 29:6–17 He also claims the officers overtightened his handcuffs, despite his complaints that they were too tight. *Id.* at 30:1–7. He then asked if he could be handcuffed with his hands in front rather than behind his back because he was recovering from an appendix surgery. *Id.* 78:2–11. The officers allegedly refused these requests. *Id.* at 77:6–12. Lugo claims DeAngelo then shoved him with such force that he fell backwards onto a couch behind him, which opened one of his stitches and caused significant bleeding. *Id*. at 32:17–19, 51:22–24, 78:4–6. DeAngelo denies ever shoving Lugo and claims he did not have physical contact with him. DeAngelo Aff. ¶ 10.

The officers took Lugo to the Bucks County Jail, where a booking officer interviewed him. *Id.* at 11:24, 12:1–3. According to the booking questionnaire, the officer noted Lugo did not "have any observable medical problems," and did not complain of any. Def.'s Mot. for Summ. J. Ex. D, ECF No. 33. The officer also wrote that Lugo was not hurt or injured and had no major medical problems. The officer did comment that Lugo had his appendix removed the week before. *Id.* On November 15, 2017, less than a month after his arrest, prison staff asked Lugo to explain what happened on the day he was arrested. *Id.* Ex. E, at 1. In response, Lugo did not mention being handcuffed, shoved, or otherwise injured in any way. *Id*. Lugo's medical records reflect multiple

2

subsequent visits with prison medical staff, but there is no documentation of any injury suffered during his arrest. *Id.* Ex. F.

Lugo filed suit on April 4, 2019, asserting claims for false arrest, malicious prosecution, and excessive force. The Court screened Lugo's Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and dismissed the false arrest and malicious prosecution claims as barred by *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). May 16, 2019, Order, ECF No. 7; June 7, 2019, Order, ECF No. 11. The Amended Complaint names as defendants Carlo DeAngelo, Christopher Baker, Lance Lonsinger, and Ryan Melley. After filing the Amended Complaint, Lugo voluntarily dismissed his claims against Baker, Lonsinger, and Melley. The only remaining cause of action is Lugo's excessive force claim against DeAngelo.

DeAngelo now moves for summary judgment, arguing the evidence shows he used reasonable force, Lugo has no evidence of injury, and there is no evidence, other than Lugo's own testimony, that he ever "shoved" Lugo. The Court held oral argument on the Motion on April 5, 2021.

**DISCUSSION**

Officer DeAngelo's description of the events differs significantly from Lugo's testimony, and virtually all the other evidence on the record supports DeAngelo's version of events. Because no reasonable jury could return a verdict for Lugo, there is no genuine dispute as to any material fact. DeAngelo is entitled to judgment as a matter of law, and the Court will enter judgment in his favor.

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material" facts are those "that might affect the outcome of the suit under the governing

law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). "By its very terms, [the summary judgement] standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A nonmoving party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings." *Williams v. West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

The Court is generally required to view facts in the light most favorable to the non-movant. *Duvall v. Hustler*, 447 F. Supp. 3d 311, 315 (E.D. Pa. 2020) (citation omitted). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Finally, a summary judgment motion may not be defeated by speculation and conjecture, or conclusory, self-serving affidavits. *See Wharton v. Danberg*, 854 F.3d 234, 244 (3d Cir. 2017); *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012).

Section 1983 authorizes an action against a person, who under color of state law deprives someone of a federal constitutional or statutory right. *See* 42 U.S.C. § 1983. Section 1983 is not a source of substantive rights, but "a method for vindicating federal rights elsewhere conferred by . . . the United States Constitution and federal statutes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). The U.S. Supreme Court held the use of excessive force during an arrest, investigatory

stop, or any other "seizure" of a person at liberty is judged by Fourth Amendment standards. *Graham v. Connor*, 490 U.S. 386 (1989). Determining whether the force used in a given instance is "reasonable" for Fourth Amendment purposes requires balancing the nature and quality of intrusion against the government's interest at stake. There is no precise definition for this reasonableness test. Courts should instead consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

The Third Circuit has further instructed courts to evaluate excessive force claims under "the totality of the circumstances." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997) (citing *Graham*, 490 U.S. at 386). Relevant factors include "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the numbers of persons with whom the police officers must contend at one time." *Id.* at 822. In excessive force cases dealing with handcuffs in particular, courts in this Circuit have generally held a successful claim requires that a plaintiff explicitly complain about the tightness, the officer ignored or refused the complaints, and the plaintiff must have evidence of injury. *See Gilles v. Davis*, 427 F.3d 197 (3d Cir. 2005); *Tate v. West Norriton Township*, 545 F. Supp. 2d 480 (E.D. Pa. 2008); *Rosenberg v. Homoki*, No. 06-3719, 2009 U.S. Dist. LEXIS 31626 (E.D. Pa. Apr. 9, 2009). Other actions, such as drawing a weapon or using physical force, should be analyzed under the totality of the circumstances test.

Considering the governing case law for excessive force claims, a reasonable jury could not return a verdict for Lugo on this record. Although there is a material dispute, it is not genuine. *See*

*Anderson*, 477 U.S. at 248. The record in this case consists of Lugo's deposition, DeAngelo's sworn affidavit, and Lugo's prison and medical records.

The parties dispute what transpired on October 17, 2017. Lugo alleges DeAngelo shoved him onto a couch while he was handcuffed. Lugo testified at deposition that DeAngelo's shove opened one of his stiches and caused significant external bleeding. DeAngelo maintains "at no point during [his] encounter with Mr. Lugo on October 20, 2017, did [he] shove or have any physical contact with Mr. Lugo." DeAngelo Aff. ¶ 10.

Lugo's booking questionnaire—conducted hours after his arrest—states he was not hurt or injured and was not suffering from any major medical problems. *See* Def.'s Mot. for Summ. J. Ex. D, ECF No. 33. The booking officer indicated Lugo had no observable medical problems and did not complain of any. *Id.* The medical records from Lugo's time in custody also make no mention of an injury. *Id.* Ex. F. Finally, when prompted to talk about "what happened the day [he] was arrested," Lugo made no mention of being shoved by DeAngelo or experiencing any injury. *Id.* Ex. E.

DeAngelo also claims he was not the handcuffing officer and that Lugo complained the handcuffs were too tight in the presence of said handcuffing officer. Lugo Dep. 78:2–15, ECF No. 33. Even if DeAngelo was able to loosen the handcuffs, Lugo still has an insufficient claim. *See Giles*, 427 F.3d at 197. Lugo asserts he complained about the handcuffs but did nothing more. He did not experience any injury nor is there corroborating evidence DeAngelo heard the request and refused. Additionally, Lugo's medical records contain no record of him seeking treatment. Def.'s Mot. for Summ. J. Ex. F, ECF No. 33. Although there is a material dispute as to the facts surrounding the arrest, the documentary evidence directly contradicts Lugo's version of events and directly supports DeAngelo's version of events. No reasonable jury could find Lugo has satisfied

the *Graham v. Connor* totality of the circumstances test for excessive force in violation of the Fourth Amendment.

**CONCLUSION**

There is no genuine dispute of material fact in this case because no reasonable jury could find for Lugo based on the record before the Court. The Court will therefore grant DeAngelo's motion and enter judgment in his favor.

An appropriate order follows.

BY THE COURT:

  /s/ Juan R. Sánchez  
Juan R. Sánchez, C.J.
